UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
SMART MEDICAL SOLUTIONS LLC,

                Plaintiff,

    - against -

MEDDCARE CORPORATION d/b/a MEDDCARE and
KULBHUSHAN JOHAR a/k/a JACK JOHAR

                Defendants.
-----------------------------------------------------------------------x

Case No. 1:22-cv-05824

**COMPLAINT**

Plaintiff SMART MEDICAL SOLUTIONS LLC ("Plaintiff"), by and through its attorneys Jacobowitz Newman Tversky LLP, for its complaint against defendants MEDDCARE CORPORATION d/b/a MEDDCARE and KULBHUSHAN JOHAR a/k/a JACK JOHAR (collectively, "Defendants") alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for, among other things, breach of contract, fraud, unjust enrichment, breach of implied duty of good faith and fair dealing, and conversion, arising out of a deal pursuant to which Defendants agreed to provide Plaintiff with certain goods. With numerous breached agreements, false representations, and broken promises, Defendants, after much delay, ultimately failed to perform and then, despite promising otherwise, failed to return the hundreds of thousands of dollars Plaintiff had advanced in January 2021 as a deposit.

**PARTIES**

2. Plaintiff Smart Medical Solutions LLC is a New York limited liability company. Plaintiff's members are all domiciled in New York.

3. Upon information and belief, Defendant Meddcare Corporation d/b/a MEDDCARE ("MEDDCARE") is a California Corporation, not incorporated in New York, with a principal place of business at 1505 S Dupont Ave, Suite F, Ontario, California 91761.

4. Upon information and belief, Defendant Kulbhushan Johar a/k/a Jack Johar ("JOHAR") is an individual residing in California and the CEO of MEDDCARE.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states, and the amount of controversy herein exceeds $75,000.00.

6. The Court has personal jurisdiction over the Defendants as they conducted substantial business in New York, and actions and events giving rise to Plaintiff's claims occurred in New York.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff is located in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

**Background**

8. Plaintiff is engaged in the business of distributing certain medical supplies.

9. Upon information and belief, MEDDCARE is a supplier and manufacturer of many health care products.

10. In 2020 and 2021, during the height of the COVID-19 pandemic, Plaintiff regularly procured and distributed certain nitrile gloves.

11. Defendant had a reputation for providing nitrile gloves which were in hot demand at the time.

12. Before the parties entered into any agreement, Defendants made numerous representations which Plaintiff relied upon before entering into any deal. For instance, JOHAR represented that he and MEDDCARE had their own products and were thus able to procure the gloves expeditiously.

13. Additionally, Defendants represented themselves as having experience providing medical supplies, including personal protective equipment ("PPE"), such as nitrile gloves, during the COVID-19 Pandemic.

14. At the time, Plaintiff was unaware that Defendants were apparently just middlemen who planned on procuring the gloves from overseas providers.

**The Original Agreement**

15. On or about January 14, 2021, Plaintiff and MEDDCARE entered into an agreement pursuant to which MEDDCARE agreed to ship 10,680 boxes of certain nitrile gloves to Plaintiff, in Brooklyn, at the rate of a $101.00 per for a total purchase price of $1,078,680.00 (the "Original Agreement").

16. Pursuant to the parties' Original Agreement, and as detailed in MEDDCARE's invoice therefor, Plaintiff was obligated to make a 30% downpayment. Sure enough, in connection therewith, on or about January 14, 2021, Plaintiff dutifully wired $323,604.00 to MEDDCARE (hereinafter, "Downpayment").

17. As all the parties were aware, a key and crucial component of the deal, was expediency. Indeed, Defendants understood that with the daily fluctuations in the market during the pandemic, and with Plaintiff foregoing other business opportunities to purchase the gloves

from the Defendants, the goods had to be timely delivered for the deal to make sense for Plaintiff.

18. Defendants led Plaintiff to believe that the gloves were ready to be delivered in a few short weeks. In fact, MEDDCARE's invoice represented that the "Cargo Ready Date" was February 3, 2021.

19. Nevertheless, a few weeks after entering into the Original Agreement, and days after the gloves were supposed to be ready, on or about February 5, 2021, Defendants first informed Plaintiff that the gloves would not be delivered on time. However, Defendants promised Plaintiff that they would have at least one container of gloves ready before February 24, 2021, and the others by the first week of March 2021.

20. In the meantime, Plaintiff regularly followed up, and Defendants continued to guarantee that shipment was just a few weeks away.

**The Revised Agreement**

21. After more delays, on March 25, 2021, Defendants informed Plaintiff that the gloves they had for Plaintiff were not of the right quality.

22. Plaintiff therefore demanded that Defendants return the Downpayment immediately.

23. However, Defendants refused to do so. Instead, Defendants told Plaintiff that they had some satisfactory nitrile gloves in stock, far less than the number of gloves contemplated in the Original Agreement, which Defendants promised were ready to ship immediately.

24. Thus, the parties entered into a new agreement, on or about March 29, 2021, whereby Defendants agreed to immediately provide Plaintiff with 3,500 boxes of certain nitrile

gloves for a sum of $353,500.00 of which Plaintiff received a $323,604.00 credit for the Downpayment (the "Revised Agreement").

25. The Revised Agreement was reflected in a new invoice from MEDDCARE.

26. A key and crucial part of the Revised Agreement was Defendants unequivocal representation that the boxes of gloves were ready to ship. Indeed, the new invoice, dated March 29, 2021, also listed that same day as the "ship date".

**Defendants Again Fail to Perform**

27. Yet, shortly thereafter, and despite Defendants explicit representations otherwise, the delays continued.

28. Additionally, despite Plaintiff's repeated demands, Defendants failed to provide confirmation or documentation regarding the gloves that were supposedly ready to ship immediately.

29. Nevertheless, for weeks, Defendants promised that the boxes would be sent out by April 21, 2021.

30. However, when that day came, Defendants failed to provide the gloves; instead, Defendants were full of excuses all of which could not explain why Defendants would be unable to provide gloves that were supposedly ready when the Revised Agreement was entered.

31. Accordingly, on or about April 22, 2021, Plaintiff again demanded that Defendants return the Downpayment.

32. This time, the Defendants did not disagree.

**Defendants Repeated Delays and Broken Promises**

33. Beginning in April 2021 and continuing for months thereafter, Defendants repeatedly promised Plaintiff that the Downpayment would be returned in just a few days.

34. However, time and time again, Defendants utilized a bunch of "excuses" for why they needed yet more time to return Plaintiff's money.

35. On or about July 30, 2021, Defendants wired five thousand dollars ($5,000) to Plaintiff and continued to promise that more payments (and the entire Downpayment) would be coming.

36. Yet thereafter, Defendants continued the never-ending pattern of delays, broken promises, and hollow excuses.

37. In the end, after all the delays, promises, and excuses, and despite Plaintiff's repeated demands, Defendants failed to return the Downpayment to Plaintiff.

38. In the meantime, while waiting months for gloves that Defendants represented to Plaintiff would be delivered immediately, and having still not received its Downpayment back, Plaintiff lost out on numerous business opportunities.

39. Indeed, during this time, Plaintiff had numerous clients willing to buy nitrile gloves, and Plaintiff could have procured the gloves, or other products using its Downpayment, from one of its other sources.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – Against Only MEDDCARE)**

40. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

41. The Original Agreement constituted a legally binding and enforceable contract between Plaintiff and MEDDCARE.

42. Pursuant to the Original Agreement, Plaintiff dutifully provided MEDDCARE with the Downpayment.

43. Nevertheless, MEDDCARE breached the Original Agreement by failing to provide Plaintiff the gloves as agreed-upon.

44. Thereafter, the parties entered into the Revised Agreement concerning the sale of a smaller number of gloves.

45. The Revised Agreement constituted a legally binding, and enforceable contract.

46. Once again, Plaintiff satisfied all its obligations under the Revised Agreement.

47. Nevertheless, MEDDCARE also breached the Revised Agreement by, *inter alia*, failing to provide the gloves as agreed-upon.

48. Additionally, after failing to perform under both the Original Agreement and the Revised Agreement, the Defendants still failed to return the immediately owed Downpayment.

49. By virtue of MEDDCARE's breaches of contract, Plaintiff has been damaged in an amount to be determined at trial but estimated to be greater than $700,000.00, including the Downpayment, lost profits relating to the gloves, incidental and consequential damages relating to MEDDCARE's breaches of the parties' agreements, with interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
**(Fraud)**

50. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

51. As detailed above, before the parties entered into any agreement, Defendants, led by JOHAR, made numerous misrepresentations upon which Plaintiff relied upon.

52. For instance, Defendants held themselves out to be a manufacturer able to procure the gloves easily.

53. Defendants also represented that their timely performance would not be an issue.

7

54. Then, before the parties entered into the Revised Agreement, Defendants again misrepresented crucial facts upon which Plaintiff reasonably relied.

55. Specifically, the Defendants represented that all the gloves included in the Revised Agreement were ready to be shipped that same day.

56. Thereafter, Defendants continued to misrepresent the facts—including providing a litany of false promises regarding their repayment of the Downpayment.

57. These representations were false when made and Defendants clearly knew they were false and intended for Plaintiff to rely upon them. For instance, Defendants obviously knew that they were obtaining the gloves from another source. Additionally, Defendants had to know, while entering the Revised Agreement, that, despite their promises otherwise, they would not be shipping the gloves as promised.

58. Plaintiff reasonably and justifiably relied upon the Defendants' misrepresentations and promises based on Defendants' reputation in the industry, and the array of detailed excuses provided by Defendants in support of their stall tactics.

59. As a result of Defendants' misrepresentations, Plaintiff entered into the Original Agreement, then entered into the Revised Agreement, and subsequently waited for Defendants to return their Downpayment.

60. As a proximate result of Defendants' fraud, Plaintiff suffered significant damages, including the Downpayment, lost profits, as well as consequential and incidental damages.

61. Defendants' conduct was intentional, wanton, malicious, fraudulent and shocking to the conscience, and was perpetuated in total disregard to Plaintiff's rights.

62. By reason of the foregoing, Defendants should be liable for all of Plaintiff's damages, estimated to be over $700,000.00, as well as attorneys' fees, costs, and interest, and

punitive damages in the sum of at least an additional $5 million to deter themselves and others similarly inclined from perpetuating in the future such acts of misconduct as were committed by Defendants.

### THIRD CAUSE OF ACTION
**(Breach of Implied Duty of Good Faith and Fair Dealing – Against MEDDCARE Only)**

63. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. Both the Original Agreement and the Revised Agreement, like all contracts, contain an implied obligation on the parties to act fairly and in good faith.

65. MEDDCARE breached its duty of good faith and fair dealing with its repeated bad faith conduct in relation to the parties' deal, which includes, as noted above: (i) false misrepresentations; (ii) broken promises; (iii) lies about the source, quality, availability, and shipment, of the gloves; and (iv) and dishonestly stringing Plaintiff along in connection with Defendants' failure to return the Downpayment.

66. Plaintiff suffered damages arising from MEDDCARE's breach of its duty of good faith and fair dealing, in an amount estimated to be determined at trial but estimated to be greater than $700,000.00.

### FOURTH CAUSE OF ACTION
**(Unjust Enrichment)**

67. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

68. As discussed above, Plaintiff, in anticipation of the receipt of the gloves, sent the Defendants a $323,604.00 Downpayment.

69. Yet, Defendants never provided the gloves and never returned the Downpayment—despite repeatedly conceding that they were obligated to do so.

70. If Plaintiff is not duly compensated, Defendants would be unjustly enriched.

71. Plaintiff has no adequate remedy at law.

72. Therefore, Plaintiff is entitled to damages against the Defendants for at amount to be determined at trial, but no less than $323,604.00, with interest, attorneys' fees, and costs.

### **FIFTH CAUSE OF ACTION**
**(Conversion)**

73. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

74. As demonstrated above, and as Defendants conceded, Plaintiff had a right and interest in the Downpayment.

75. Defendants failed to perform on the parties' agreements, and then failed to return the Plaintiff's Downpayment.

76. Defendants' misuse of the Downpayment deprived Plaintiff of its rights therein.

77. Accordingly, Plaintiff is entitled to damages against the Defendant for an amount to be determined at trial, but no less than $323,604.00, with interest, attorneys' fees and costs.

**WHEREFORE**, Plaintiff requests judgment against Defendants, jointly and severally, as follows:

    A.    Awarding Plaintiff damages against Defendants in an amount to be further determined but estimated to be greater than $700,000.00 and interest at the maximum legal rate;

    B.    Awarding Plaintiff punitive damages in an amount of at least $5,000,000.00;

    C.    Awarding Plaintiff its attorneys' fees, costs and disbursements of this action; and

    D.    Granting such other and further relief as to Plaintiff as the Court deems just and proper.

Dated: Cedarhurst, New York
       September 29, 2022

                **JACOBOWITZ NEWMAN TVERSKY LLP**
                *Attorneys for Plaintiff*

                By: */s/ Abraham Beinhorn*
                    Abraham S. Beinhorn
                    Evan M. Newman
                377 Pearsall Avenue, Suite C
                Cedarhurst, New York 11516
                Tel: (516) 545-0343
                Fax: (212) 671-1883
                Email: abeinhorn@jntllp.com