UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SMART MEDICAL SOLUTIONS LLC,

                Plaintiff,

      -against-

MEDDCARE CORPORATION d/b/a
MEDDCARE and KULBHUSHAN
JOHAR a/k/a JACK JOHAR,

                Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-5824 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Smart Medical Solutions LLC initiated this action against Defendants MeddCare Corporation ("MeddCare") and Kulbhushan Johar, also known as Jack Johar, on September 29, 2022.[1] (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff contends, *inter alia*, that Defendant Johar, working as MeddCare's CEO, engaged in fraud, by making numerous misrepresentations upon which Plaintiff relied. (*Id.* ¶¶ 1, 4, 50–62.) Plaintiff further contends, *inter alia*, that Defendant MeddCare breached the parties' legally binding and enforceable contract agreements and engaged in fraud. (*Id.* ¶¶ 1, 19, 27–62.)

Currently pending before the Court is Plaintiff's motion for default judgment, which the Honorable LaShann DeArcy Hall referred to the undersigned magistrate judge for a report and recommendation. (*See* Mot. for Default J., ECF No. 15; Dec. 16,

---

[1] Plaintiff, an alleged New York limited liability company, brought this action under 28 U.S.C. § 1332, against Defendant MeddCare, alleged to be a California corporation with a principal place of business at 1505 S. Dupont Ave., Suite F, Ontario, California 91761, and Defendant Johar, an individual residing in California. (Compl., ECF No. 1, ¶¶ 2–5.) Plaintiff alleges damages in excess of $75,000. (*Id.* ¶ 5.) Plaintiff states all of its LLC members are domiciled in New York. (*Id.* ¶ 2.)

2022 ECF Referral Order.) For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be denied, and that the Clerk's Entry of Default be vacated and set aside.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Procedural History

As noted, this action was commenced on September 29, 2022. (Compl., ECF No. 1.) On November 3, 2022, Plaintiff filed affidavits indicating that service had been effected as to both Defendants by leaving a copy of the summons and complaint with a man described as MeddCare's "office manager" at Johar's place of business on October 19, 2022. (*See* Affs. of Service, ECF Nos. 10 & 11; *see also* Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20.[2]) As to Defendant Johar, the process server represented that service was completed both by delivering a copy of the papers to the office manager and by mailing them to Johar at his place of business. (*See* Aff. of Service, ECF No. 10; *see also* Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20, at 2.)

Plaintiff requested a certificate of default on November 15, 2022, which the Clerk of Court entered on December 5, 2022 as to both Defendants, due to Defendants' failure to appear or otherwise defend this action. (*See* Req. for Certificate of Default, ECF No. 12; Clerk's Entry of Default, ECF No. 14.) On December 12, 2022, Plaintiff's counsel moved for default judgment, supplementing the motion with an affirmation of service of the motion on Defendants. (*See* Mot. for Default J., ECF No. 15; Aff. of Service, ECF No. 16.) On December 16, 2022, Judge DeArcy Hall referred Plaintiff's motion to the

---

[2] Plaintiff claims that "service was sufficient as, in accordance with CPLR § 308(2) Johar was served at, upon information and belief, his place of business, and Meddcare was served vis-à-vis its office manager pursuant to CPLR § 311(1) and Rule (4)(h)(1) of the Federal Rules of Civil Procedure." (Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20, at 2.)

undersigned magistrate judge for a report and recommendation. (Dec. 16, 2022 ECF Referral Order.)

On January 6, 2023, the Court entered an order directing Plaintiff to demonstrate that service of the complaint was legally sufficient, and to establish compliance with the requirements of E.D.N.Y. Local Civil Rule 55.2. (Jan. 6, 2023 ECF Scheduling Order.) The Court further noted that Rule 55.2(c) requires that all default motion paperwork submitted to the Court pursuant to Rule 55.2(a) or (b) must be simultaneously mailed to the party against whom a default judgment is sought, and that a supplemental affidavit be filed with the Court in the event that the mailing of a motion for default judgment is returned to the sender. (*Id.*) The Court also scheduled a motion hearing to take place on January 31, 2023. (*Id.*) On January 10, 2023, Plaintiff's counsel filed an affidavit of service as to both Defendants, representing that he served the default motion, supporting affirmation, and exhibits by mail on January 9, 2023, including a mailing to Defendant Johar's residence for the first time. (*See* Aff. of Service, ECF No. 19.) On January 24, 2023, Plaintiff submitted a letter "to demonstrate that Defendants were properly served with Plaintiff's Complaint and motion papers," along with supporting exhibits. (*See generally* Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20.)

On January 31, 2023, the Court held the scheduled motion hearing, at which Defendant Johar made his first appearance in this case, without counsel. (*See* Jan. 31, 2023 ECF Minute Entry and Order.) At the hearing, Johar represented that he was out of the country with plans to return mid-February, and that he was in the process of obtaining legal counsel. (*See id.*) The Court scheduled a status hearing to take place on March 13, 2023. (*Id.*) Shortly thereafter, counsel for Defendants appeared. Specifically, on February 23, 2023, an attorney entered a notice of appearance as to both Defendants. (*See* Notice of Appearance, ECF No. 21.)

3

At the March 13, 2023 status conference, Defendant Johar and counsel for both parties appeared. (Mar. 13, 2023 ECF Minute Entry and Order.) The Court directed the parties to file a joint status report by April 3, 2023, advising the Court as to whether, *inter alia*, Plaintiff intended to withdraw the pending motion for default judgment in light of Defendants' appearance in this case. (*Id.*) On April 3, 2023, Defendants filed an answer to the complaint, as well as a joint status report, indicating that Plaintiff did not intend to withdraw its pending motion for default judgment. (*See* Answer, ECF No. 23; Status Report, ECF No. 24.) Defendants filed an amended answer on April 24, 2023, and subsequently filed their response to Plaintiff's motion for default judgment on April 28, 2023. (*See* Amended Answer, ECF No. 27; Defs.' Resp. to Mot. for Default J. ("Defs.' Resp."), ECF No. 29.) On May 5, 2023, Plaintiff filed a reply to Defendants' response. (*See* Pl.'s Reply, ECF No. 30.)

## II. Factual Background

Plaintiff alleges that it "is engaged in the business of distributing certain medical supplies" and that MeddCare "is a supplier and manufacturer of many health care products . . . [including] nitrile gloves which were in hot demand at the time" of the underlying business transaction, due to the COVID-19 pandemic. (Compl., ECF No. 1, ¶¶ 8–11.) Plaintiff further states that "[o]n or about January 14, 2021, Plaintiff and [MeddCare] entered into an agreement" wherein "Plaintiff was obligated to make a 30% downpayment" on an order of gloves, amounting to an initial payment of $323,604, which Plaintiff wired to Defendant. (*Id.* ¶¶ 15–16.) Plaintiff alleges that it was under the impression that Defendants were the direct supplier and that, at the time of the original agreement, "Plaintiff was unaware that Defendants were apparently just middlemen who planned on procuring the gloves from overseas providers." (*Id.* ¶¶ 9, 14.) Plaintiff claims that all parties were aware that expediency was a crucial component of the deal,

4

and that Defendants led Plaintiff to believe that the gloves would be delivered promptly, as the "invoice represented that the 'Cargo Ready Date' was February 3, 2021." (*Id.* ¶¶ 17–18.) On or about February 5, 2021, Defendants informed Plaintiff that the gloves would not be delivered on time, promising that the delivery would be ready in about a month. (*See id.* ¶ 19.)

On March 25, 2021, "Defendants informed Plaintiff that the gloves they had for Plaintiff were not of the right quality." (*Id.* ¶ 21.) Plaintiff claims that it demanded the return of its down payment, which Defendants refused to do, instead offering a new agreement, which the parties entered into on or about March 29, 2021, "whereby Defendants agreed to immediately provide Plaintiff with 3,500 boxes of certain nitrile gloves for a sum of $353,500.00 of which Plaintiff received a $323,604.00 credit" for the down payment reflected in a new invoice from MeddCare. (*Id.* ¶¶ 22–25.) Defendants again failed to provide the gloves, leading Plaintiff to request its down payment again, which Defendants never gave back, except for a $5,000 wire transfer sent to Plaintiff on or about July 30, 2021. (*See id.* ¶¶ 31–39.) Plaintiff asserts five causes of action as to Defendant MeddCare, as follows: (1) breach of contract; (2) fraud; (3) breach of implied duty of good faith and fair dealing; (4) unjust enrichment; and (5) conversion. (*See id.* ¶¶ 40–77.) Plaintiff likewise asserts three causes of action as to Defendant Johar, as follows: (1) fraud; (2) unjust enrichment; and (3) conversion. (*See id.*)

As to the pending default motion, Defendants claim that "as soon as [they] became aware of this litigation in October 2022, they reached out to Plaintiff's attorney to request an extension of time to respond[,] . . . engaged their California-based attorney to contact Plaintiff's attorney for the same purpose[,] . . . [and] began to look for New York-licensed attorneys to formally appear on their behalf." (Defs.' Resp., ECF No. 29, at 10; *see also* Johar Aff., ECF No. 29-1, ¶¶ 34–38; Parties' E-mail Correspondence, ECF

5

No. 20-4.) Around this time, Defendant Johar had to travel out of the country to India with his son "for a medical trip that was scheduled before he became aware of this lawsuit." (Defs.' Resp., ECF No. 29, at 10; *see also* Johar Aff., ECF No. 29-1, ¶ 39.) While still in India, Defendant Johar received a message to participate in a court conference regarding Plaintiff's motion for default judgment, which he attended telephonically a few weeks before returning to the United States; Johar engaged counsel within a few days of returning to the United States. (Defs.' Resp., ECF No. 29, at 10; *see also* Johar Aff., ECF No. 29-1, ¶¶ 40–42.)

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 55 establishes the procedures for obtaining and vacating entry of a default judgment. First, Rule 55(a) provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Thereafter, a plaintiff may move for a default judgment under Rule 55(b). Following entry of a default, Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." *See Meehan v. Snow*, 652 F.2d 274, 276 n.5 (2d Cir. 1981) (per curiam) ("Entering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course . . . .").

Evaluating "good cause" under Rule 55(c) is "left to the sound discretion of a district court." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). When determining whether to relieve a party from default, courts look to three main factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* at 96; *see also Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *G&G Closed Cir.*

6

*Events, LLC v. Lopez*, No. 21-CV-7164 (KMK), 2022 WL 633875, at *1 (S.D.N.Y. Mar. 4, 2022). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. As Judge Bianco has observed, "[t]he Court is also permitted to consider relevant equitable factors, including whether . . . the entry of default would bring about a harsh or unfair result." *Raheim v. N.Y.C. Health & Hosps. Corp.*, No. 96-CV-1045 (JFB) (CPP), 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007) (quotation marks omitted).

As a general rule, "[d]efaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan*, 652 F.2d at 277; *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits."); *see also Kauhsen v. Aventura Motors, Inc.*, No. 09-CV-4114, 2010 WL 2301289, at *3 (E.D.N.Y. June 7, 2010) (observing that "[d]efault judgments are generally disfavored") (citing *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977)).

## II. Analysis

Defendants argue that there is good cause to deny Plaintiff's motion for default judgment and to set aside the entry of default under Rule 55(c). Specifically, Defendants contend that the default was not willful, that there is no prejudice to Plaintiff, and that they have several meritorious defenses, including:

> (a) MeddCare's failure to deliver on the parties' contract is excused by impossibility or commercial impracticability; (b) Plaintiff has failed to state a fraud claim against both Defendants; (c) Plaintiff's claims for fraud, breach of good faith and fair dealing, unjust enrichment, and conversion are duplicative of its breach of contract claim, for which Defendants have practicable defenses; and (d) Plaintiff does not allege any fact in support of holding Defendant Johar — who is not a party to the relevant agreements — individually liable for any of Plaintiff's claims.

7

(Defs.' Resp., ECF No. 29, at 6.) As noted above, the complaint was filed on September 29, 2022; Plaintiff filed proof of service on November 3, 2022, indicating both Defendants had been served on October 19, 2022; the motion for default judgment was mailed to Defendants on January 9, 2023; Defendant Johar appeared at the telephonic motion hearing on January 31, 2023; an attorney entered a notice of appearance for both Defendants on February 23, 2023; and Defendants filed an answer to the complaint on April 3, 2023. (Compl., ECF No. 1; Affs. of Service, ECF Nos. 10 & 11; Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20; Aff. of Service, ECF No. 19; Jan. 31, 2023 ECF Minute Entry and Order; Notice of Appearance, ECF No. 21; Answer, ECF No. 23.) While Defendants were slightly delayed at the outset, they have since made strides to actively participate in the case. Balancing the *Enron Oil* factors, the Court finds that there is good cause to set aside the default.

### A. Willfulness

In the context of default, conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by an insubstantial excuse. *See S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998). On the record before it, the Court finds that, while delayed and perhaps neglectful, Defendants' conduct fails to meet the standard of willfulness.

Defendants do not contest that they were served, but attempt to explain their failure to promptly hire counsel and appear in the case. (*See generally* Defs.' Resp., ECF No. 29.) Defendants claim that they took immediate action after they became aware of Plaintiff's complaint, but acknowledge that they failed to formally respond to the complaint within the time allotted. (*See id.*; *see also* Johar Aff., ECF No. 29-1, ¶¶ 36–40.) Defendants have offered some explanation for the delay, which was due in part to a previously planned trip to India for medical care, and a search for an attorney (licensed

8

to practice in New York) willing to take on this case. (Defs.' Resp., ECF No. 29, at 10; *see* Johar Aff., ECF No. 29-1, ¶ 39.) *See Aetna Life Ins. Co. v. Licht*, No. 03-CV-6764 (PKL) (JCF), 2004 WL 2389824, at *4 (S.D.N.Y. Oct. 25, 2004) (finding a lack of willfulness where defendants' failures were due, in part, to unexpected illnesses, afflicting both defendants' counsel and his family); *Aquapan v. Sunshine 39 Windows & Glass, Inc.*, No. 19-CV-6446 (DLI) (RML), 2022 WL 843731, at *2 (E.D.N.Y. Mar. 22, 2022) (finding lack of willful default where defendant's delay was caused by family medical emergency; collecting cases); *see also HICA Educ. Loan Corp. v. Feintuch*, No. 12-CV-5243 (ADS), 2013 WL 1898997, at *4 (E.D.N.Y. May 7, 2013); *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52 (JPO), 2013 WL 1809637, at *4–5 (S.D.N.Y. Apr. 30, 2013).

Johar's initial attempt to properly respond to the complaint (i.e., by reaching out to counsel and asking for an extension), his appearance at the January 31, 2023 motion hearing shortly after he learned about Plaintiff's default motion, and his filing of an answer to the complaint further lead the Court to believe that this was not a willful, deliberate avoidance meant to inconvenience Plaintiff. *See McNulty*, 137 F.3d at 738 (discussing the willfulness prong and observing that, in the default context, willfulness has been interpreted "to refer to conduct that is more than merely negligent or careless"); *see also Oscilloscope Pictures, Inc. v. Monbo*, No. 17-CV-7458 (MKB) (ST), 2019 WL 2435644, at *6–7 (E.D.N.Y. Mar. 25, 2019) (observing that evidence of an intention to attempt to defend against an action supports a finding that defendants' default was not willful); *Raheim*, 2007 WL 2363010, at *4 (observing that courts should "resolve any doubt about [a defendant's] willfulness in his favor").

Additionally, the Court finds that the overall timeline of the case weighs in Defendants' favor in an evaluation of willfulness. As noted above, this suit was initiated on September 29, 2022, and Defendant Johar appeared at the telephonic motion hearing,

9

within approximately four months of the filing of the complaint.[3] (*See* Compl., ECF No. 1; Jan. 31, 2023 ECF Minute Entry and Order.) The Court also finds it significant that attorneys for Defendants entered a notice of appearance in the case within seven weeks of being served with the default paperwork that was mailed to them, while Defendant Johar was out of the country. (*See* Aff. of Service, ECF No. 19 (indicating that the default paperwork was mailed on January 9, 2023); Johar Aff., ECF No. 29-1, ¶ 41 (stating that he received notice of the default "[o]n or around January 16, 202[3]"); Notice of Appearance, ECF No. 21 (filed on Feb. 23, 2023).) The Court further observes that Plaintiff did not comply with E.D.N.Y. Local Civil Rule 55.2 in regard to mailing until reminded of the requirement by the Court. (*See* Jan. 6, 2023 ECF Scheduling Order.) Notably, failure to comply with the Court's local rules is alone a sufficient basis to deny Plaintiff's motion for a default judgment. *See Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493 (AMD) (RER), 2022 WL 5428688, at *3–4 (E.D.N.Y. Aug. 16, 2022), *report and recommendation adopted*, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022).

Courts in the Second Circuit have found that a defendant's default does not rise to the level of willfulness where the time intervals between the filing of the complaint and the defendant's initial notice of appearance, or the intervals between the filing of the default motion and defendant's initial notice of appearance, were similar to, or even longer than, the delay in this case. *See, e.g., Argus Rsch. Grp, Inc. v. Argus Secs., Inc.*, 204 F. Supp. 2d 529, 531–32 (E.D.N.Y. 2002) (finding no willfulness where defendant

---

[3] The Court notes that Defendants claim they did not receive notice of this action until late October 2022, due in part to Plaintiff's failed first attempt at service to both Defendants at 1505 S. Dupont Ave., Suite F., Ontario, CA 91761, i.e., the address believed to be MeddCare's principal place of business; as well as a slight discrepancy as to MeddCare's registered address, i.e., serving the Defendants at 11552 Knott St. Unit 11, Garden Grove, CA 92841 (at "Unit 11," not "Unit C11"). (*See* Johar Aff., ECF No. 29-1, ¶¶ 34–36; Pl.'s Letter Pursuant to Jan. 6, 2023 Scheduling Order, ECF No. 20.)

10

initially retained counsel nearly twelve months after the filing of the complaint and thirteen weeks after plaintiff moved for default judgment); *Strulowitz v. Flavor Boutique 796 Inc.*, No. 18-CV-8382 (AJN), 2020 WL 2749564, at *2 (S.D.N.Y. May 26, 2020) (finding no willfulness where defendant's counsel first appeared over five months after the filing of complaint and exactly five weeks after default was entered).

Accordingly, even if the Court were to assume *arguendo* that Defendants' failure to appear was willful, this timeline does not evidence an "egregious" evasion of this case that would support the entry of default on the basis of willfulness alone. *See McNulty*, 137 F.3d at 738. Under the tolerant standard of Rule 55(c), the Court must resolve any doubt about Defendants' willfulness in their favor. *See Enron Oil Corp.*, 10 F.3d at 98. Given the lack of clear evidence as to a willful failure to appear in this case, the Court weighs this factor for Defendants.

### B. Prejudice

In evaluating a motion to vacate a default, "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 131 (E.D.N.Y. 2015). Indeed, as the Second Circuit has observed, to prevail on the prejudice prong, a plaintiff must show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916 (quotation marks omitted); *see also Certain Underwriters at Lloyd's London v. Mr. Demolition, Inc.*, No. 20-CV-1886 (PKC) (SMG), 2020 WL 9260214, at *4 (E.D.N.Y. Dec. 28, 2020) (finding no prejudice where delay would not result in the loss of evidence or create difficulties during discovery); *Raheim*, 2007 WL 2363010, at *5.

Plaintiff's prejudice argument is grounded on claims that Defendants "deliberately chose not to appear in this action, [leaving Plaintiff] . . . with little choice

11

but to file the instant motion . . . and incur substantial costs because of Defendants' willful default." (Pl.'s Reply, ECF No. 30, at 6.) Additionally, Plaintiff argues that it will be further prejudiced in its ability to litigate on the merits, as "Defendants implicate, as purported defenses, certain overseas actors and various international legal proceedings," leading to "difficulties in obtaining discovery." (*Id.* at 6–7.)[4]

Defendants argue that Plaintiff cannot establish prejudice because of the relatively short time the case has been pending; they further argue that Plaintiff cannot show any loss of evidence or substantive prejudice to Plaintiff caused by Defendants' delayed appearance. (*See* Defs.' Resp., ECF No. 29, at 11 (arguing that "this matter has only begun, with discovery not yet starting, so Plaintiff has not materially changed its position herein based on any act or inaction of Defendants").)

Again, the timing here favors vacating the entry of default. As discussed above, Defendant Johar appeared at the telephonic motion hearing within approximately four months of the filing of the complaint, and attorneys for Defendants entered a notice of appearance in the case within about seven weeks of receiving the mailed default paperwork. *See Sibley*, 304 F.R.D. at 131 (determining that plaintiff would suffer no prejudice from vacatur of the entry of default since the case was in its early stages). (*See also* Compl., ECF No. 1; Defs.' Resp., ECF No. 29, at 10; Johar Aff., ECF No. 29-1, ¶ 41; Notice of Appearance, ECF No. 21.)

---

[4] Plaintiff also argues that "Defendants' misleading and incomplete representation of the facts belies their argument as Defendants fail to offer any explanation for why they failed to respond for two and a half months," stating that Defendants admit to becoming aware of this litigation in October 2022, and that Johar was only in India "'between January 15 and February 18, 2022.'" (Pl.'s Reply, ECF No. 30, at 5–6 (quoting Johar Aff., ECF No. 29-1, ¶ 40).) The Court remains cognizant that in considering whether a default should be vacated, any "doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

12

The difficulties of discovery alleged here are not increased due to the delay in Defendants' appearance. Rather, the potential difficulties of discovery arising from Defendants' purported defenses would still exist, even if Defendants had appeared earlier in the action. *See Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 697 (S.D.N.Y. 1986) (finding no prejudice to plaintiff where "the difficulties plaintiff is likely to encounter in discovery may be caused less by the delay occasioned by [defendant's] default than by the difficulties that often arise in international discovery"). Additionally, the Court notes that the anticipated discovery challenges do not fall solely on Plaintiff since "[a] defendant raising [an affirmative] defense bears the burden to prove the new facts he brings forth." *Porter v. Prudential Ins. Co. of Am.*, No. 05-CV-6113 (KMK) (RLE), 2006 WL 2038457, at *3 (S.D.N.Y. July 18, 2006).

Finally, Plaintiff's argument that it was forced to "incur substantial costs because of Defendants' willful default" fails to establish prejudice. (Pl.'s Reply, ECF No. 30, at 6.) *See Gesualdi v. Gayle Bard Landscapes, Inc.*, No. 10-CV-5762 (ARR) (LB), 2011 WL 2457882, at *3 (E.D.N.Y. May 31, 2011) ("[C]osts and legal fees in pursuing a default judgment . . . do not constitute prejudice." (citation omitted)), *report and recommendation adopted*, 2011 WL 2432936 (E.D.N.Y. June 16, 2011); *see also New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-449 (ADS) (AKT), 2020 WL 2770922, at *7 (E.D.N.Y. May 8, 2020).

Because the litigation was not significantly delayed by Defendants' initial failure to appear, and there is no indication that any evidence has been lost or that vacating the default will cause Plaintiff additional difficulties during discovery, this factor weighs in Defendants' favor.

13

### C. Meritorious Defenses

Finally, with respect to the existence of potentially meritorious defenses, the Court finds that Defendants have raised defenses and argument that weigh in favor of setting aside the default so that this case can reach the merits. (*But see* Pl.'s Reply, ECF No. 30, at 7 (claiming that Defendants lack any meritorious defenses).)

"To establish a meritorious defense, a defendant need not prove the defense conclusively." *Lloyd's London*, 2020 WL 9260214, at *4. At the same time, conclusory denials are not enough. *Enron Oil Corp.*, 10 F.3d at 98; *see also Am. All. Ins. Co.*, 92 F.3d at 61 (observing that a "'meritorious defense' . . . need not be ultimately persuasive at [the default] stage" and that a "'defense is meritorious if it is good at law so as to give the factfinder some determination to make'" (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988))). Courts in the Second Circuit have found that where defendants have "potentially meritorious legal defenses to one or more of [plaintiff's] claims," they are deserving of relief from default. *Fischer v. Forrest*, No. 14-CV-1307 (PAE), 2014 WL 2717937, at *4 (S.D.N.Y. June 16, 2014); *see also Ostrolenk Faber LLP v. Lagassey*, No. 18-CV-1533 (RA), 2019 WL 2433887, at *2 (S.D.N.Y. June 11, 2019).

In this case, Defendants argue several defenses to Plaintiff's claims, as set forth above. (*See* Defs.' Resp., ECF No. 29, at 11–15.) Several of them appear potentially meritorious, including that the fraud here is not pled with sufficient particularity and that there is no basis to hold Defendant Johar personally liable for MeddCare's alleged liabilities. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (noting that to meet Fed. R. Civ. P. 9(b)'s "particularity" requirements, "a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

14

made, and (4) explain why the statements were fraudulent.'" (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994))); *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201 (S.D.N.Y. 2016) (finding allegations were "not sufficient to plead fraud with particularity under Rule 9(b)"). (*See* Defs.' Resp., ECF No. 29, at 13, 15.) Defendants also raise the affirmative defense of commercial impracticability to Plaintiff's breach of contract claim. (Defs.' Resp., ECF No. 29, at 12–13.) Specifically, Defendants argue that their "failure to deliver the relevant goods to Plaintiff . . . resulted from the criminally fraudulent conduct of third-party suppliers over whom [Defendants] had no control . . . during the global [COVID-19] pandemic." (*Id.*; *see* Johar Aff., ECF No. 29-1, ¶¶ 10–27; Thai Police Report, ECF No. 29-3.) *See generally Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018) (discussing commercial impracticability under New York law).

While the commercial impracticability defense is narrowly applied, Defendants have posited a possible meritorious defense to Plaintiff's breach of contract claim. *Richardson v. Nassau County*, 184 F.R.D. 497, 502 (E.D.N.Y. 1999) (finding that defendant's denial of factual allegations during oral argument satisfied this lenient standard); *cf. Dental Health Prods., Inc. v. Sunshine Cleaning Gen. Servs., Inc.*, No. 21-CV-1358 (WCG), 2023 WL 2163495, at *6–7 (E.D. Wis. Feb. 22, 2023) (discussing force majeure and commercial impracticability defense in a case involving failure to deliver gloves during COVID-19). Because "[a] meritorious defense 'need not be ultimately persuasive at this stage,'" the Court need not reach the merits as to whether it can be conclusively proved at this time. *Gunnells v. Teutul*, 392 F. Supp. 3d 451, 453 (S.D.N.Y. 2019) (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).

Moreover, even if the Court were to assume *arguendo* that Defendants do not present a meritorious defense, the Second Circuit has observed that a court need not

15

find all three *Enron Oil* factors to set aside an entry of default. *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010) ("Having found that the entry of default failed on both the willfulness and prejudice prongs of the factors considered in determining whether to open a default judgment, we need not address the 'meritorious defense' prong to find that default judgment was improperly granted . . . ."). Accordingly, even if this factor does not weigh as strongly for Defendants, it does not disturb the Court's ultimate conclusion that, on balance, the motion for default judgment should be denied.

### D. Equitable Considerations

In addition to the Court's conclusions that Defendants' delays were not willful, there is a lack of cognizable prejudice to Plaintiff, and that Defendants have posited a potential meritorious defense, the Court further finds that entry of the default judgment requested here would result in an extremely harsh and unfair result. In its default motion, Plaintiff requests a damages award of $323,604 as to both Defendants, based upon the unreturned down payment for the original contract, plus interest.[5] (*See* Proposed Order, ECF No. 15-10, at 1; Pl.'s Mem. of Law in Supp. of Mot. for Default J. ("Pl.'s Mem."), ECF No. 15-9, at 8–10.) As noted above, Defendant Johar is not a party to the underlying contract, and, he argues, the complaint does not adequately claim his involvement in the alleged fraud. (*See* Defs.' Resp., ECF No. 29, at 15.) And notwithstanding that Defendant Johar is not named in all of the causes of action, Plaintiff seeks judgment against him personally for the full damages amount. (*See* Compl., ECF No. 1, at 11; *see also* Pl.'s Reply, ECF No. 30, at 12–13.)

---

[5] As previously noted, the original agreement required a down payment of $323,604 from Plaintiff; the revised agreement was for a $353,500 down payment, of which Plaintiff received a $323,604 credit for its previous payment; and Plaintiff was refunded $5,000 on or about July 30, 2021. (Compl., ECF No. 1, ¶¶ 16, 24, 35.)

16

Entry of judgment in that amount as to both Defendants — including Defendant Johar personally — "would result in a 'harsh or unfair result' by denying [Defendants] the opportunity to defend the action on the merits." *Raheim*, 2007 WL 2363010, at *6 (quoting *Altamirano v. Copiague Funding Corp.*, No. 06-CV-1751 (PCD), 2007 WL 1232178, at *3 (D. Conn. Apr. 25, 2007)). This is especially true in cases where, as here, Defendants "evidence an intention and attempt to defend against the action." *Oscilloscope Pictures*, 2019 WL 2435644, at *7.

Lastly, the Court notes that, although Defendants have waived a personal jurisdiction defense, Plaintiff does not appear to have adequately served Defendant MeddCare. While Plaintiff asserts that "Meddcare was served vis-à-vis its office manager pursuant to [N.Y. C.P.L.R. § 311(a)(1)] and Rule (4)(h)(1)," the affidavit of service contains insufficient information to conclude that service was properly effected under either provision.[6] *See Cooney v. Barry Sch. of Law*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014) (observing that the term "'managing or general agent'" in N.Y. C.P.L.R. § 311(1) " is a term of art" and "does not refer to *any* agent of the [company], but one who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise"); *Farquharson v. Barnes & Noble, Inc.*, No. 17-CV-300 (KAM) (CLP), 2018 WL 11486486, at *4 (E.D.N.Y. Mar. 5, 2018) (explaining that "the title of . . . manager alone does not support an inference that an individual" can accept service on behalf of a corporate defendant under N.Y. C.P.L.R. § 311(1)); *Kwan v. Schlein*,

---

[6] It further appears that determining whether MeddCare was adequately served under California law, like New York law, would have required more information than what was included in the affidavit of service. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A); *Eclipse Fuel Eng'g Co. v. Superior Ct.*, 307 P.2d 739, 746 (Cal. Dist. Ct. App. 1957) (explaining that whether a person qualifies as a "general manager" capable of accepting service on behalf of a corporation "depend[s] on the particular facts involved," including whether they are "of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made" (quotation marks omitted)).

17

441 F. Supp. 2d 491, 496 (S.D.N.Y. 2006) (finding that, absent more information, service was inadequate under Rule 4(h)(1) where made upon an "Office Manager"). Accordingly, the irony is that, had Defendants never appeared in this action, a default judgment may very well have been precluded as to MeddCare. *See Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) ("A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected."). Plaintiff nevertheless attempts to cling to the entry of default, functionally seeking to fault Defendants *for* appearing, by requesting a default judgment to which Plaintiff otherwise may not have been entitled. This too weighs in favor of vacating the default.

### E. Weighing the Factors

The Court concludes that an analysis of the *Enron Oil* factors and equitable considerations all weigh in favor of vacating the entry of default pursuant to Federal Rule of Civil Procedure 55(c)'s "good cause" standard. *Enron Oil Corp.*, 10 F.3d at 96. The Court notes that while Defendants' actions in responding to the complaint were perhaps negligent, they fail to constitute a willful default. Additionally, Plaintiff has not shown sufficient prejudice that would result from setting aside the default. Defendants have presented at least one potentially meritorious defense to Plaintiff's claims against them. Moreover, denying Defendants an opportunity to defend on the merits, given evidence of their intention to attempt to defend, and entry of judgment as to both Defendants, including Defendant Johar personally, for $323,604, would constitute a harsh and unfair result. Finally, as noted above, Plaintiff did not comply with the requirements of E.D.N.Y. Local Civil Rule 55.2 until reminded by the Court, and this failure alone constitutes a sufficient basis for the denial of Plaintiff's motion. *Reyes-Fana*, 2022 WL 5428688, at *3.

18

Setting aside the default is in keeping with the Second Circuit's strong preference for deciding cases on the merits. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). "'This result is particularly warranted given that we are considering the vacatur of an entry of default, rather than of a default judgment' and Fed. R. Civ. P. 55(c) requires only a finding of 'good cause' to set aside an entry of default." *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 199 (S.D.N.Y. 2021) (quoting *Gench v. HostGator.com LLC*, No. 14-CV-3592 (RA) (GWG), 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015), *report and recommendation adopted*, 2015 WL 4579147 (S.D.N.Y. July 29, 2015)).

## CONCLUSION

As the Court finds that the *Enron Oil* factors and equitable considerations weigh heavily in favor of denying the entry of default against Defendants, the Court respectfully recommends that the default entered by the Clerk be vacated, and that Plaintiff's motion for default judgment be denied.

\*   \*   \*   \*   \*

Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable LaShann DeArcy Hall, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object

19

timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:   Brooklyn, New York
         August 8, 2023

                                          *Taryn A. Merkl*
                                          _____
                                          TARYN A. MERKL
                                          UNITED STATES MAGISTRATE JUDGE